UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEGEND AUTORAMA LTD. d/b/a LEGEND AUDI,<br><br>          Plaintiff,<br><br>  - against -<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. d/b/a AUDI OF AMERICA, INC.,<br><br>          Defendant. | **COMPLAINT AND JURY DEMAND**<br><br>Case No._____ |

Plaintiff Legend Autorama Ltd. d/b/a Legend Audi ("Legend"), by and through its attorneys, Arent Fox LLP, as and for its complaint against Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ("Audi"), alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff Legend is an Audi dealer located in Amityville, New York.  This Complaint arises out of Audi's unlawful and unjustified decision to cease payments of monetary bonuses to Plaintiff on the basis of a purported failure to comply with provisions of a facility construction agreement ("Facility Agreement") entered into between the parties, after Audi expressly, in writing, agreed to extend the deadlines that Legend supposedly missed.

2. Audi, under the false guise that Legend did not meet deadlines under the Facility Agreement, seeks to punish Legend by unlawfully denying it Standards Bonus incentive payments that Audi  knows is necessary for dealers such as Legend to be profitable, not to mention viable.

1

3. Legend, therefore, brings this action against Audi for breach of contract, for a declaratory judgment and injunctive relief, and for violation of New York's Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Tr. L §§ 460, *et seq.* ("Dealer Act").

4. As described more fully below, Legend, like all Audi franchisees, is a party to a Dealer Agreement with Audi, and is subject to various requirements in order to qualify for Audi's bonus program, which accounts for a substantial part of Legend's annual profits.

5. These requirements include Legend maintaining, renovating and constructing new sales and service facilities pursuant to the Facility Agreement.

6. To receive Audi's Standards Bonus, Legend is required, among other things, to construct new sales and service facilities at a cost of over $9,000,000.00 in accordance with the Facility Agreement and the schedule set forth therein.

7. Legend has already excavated the property and is about to commence footings, foundation and steel erection.

8. Pursuant to the Facility Agreement, Legend properly requested an extension of the schedule in order to complete construction of the new facility, and Audi agreed to that extension.

9. Despite Audi having agreed to Legend's extension request, and knowing of Legend's construction-related activities and phasing/scheduling needs, and knowing that Legend was relying on Audi's representations, Audi has now reneged on its agreement.

10. Despite Legend's continued compliance with the Facility Agreement, Audi informed Legend by letter dated August 5, 2015 that Audi was suspending all Standards Bonus payments to Legend. Audi delivered this letter knowing how critical the Standards Bonus is to

Legend's profitability and viability. Audi's actions now threaten Legend's ability to stay in business.

## PARTIES

11. Plaintiff Legend is a corporation organized and existing under the laws of the State of New York, with a principal place of business in Suffolk County, New York. Legend has been a licensed and authorized Audi dealer since 1980. Legend is a franchised motor vehicle dealer as defined in the Dealer Act.

12. Volkswagen Group of America, Inc. d/b/a Audi of America, Inc. ("Audi"), is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in the Commonwealth of Virginia. Audi purchases Audi vehicles from corporate affiliates in Germany and then imports and sells these vehicles to franchised Audi dealers throughout the United States, including Legend. Audi is a franchisor as defined in the Dealer Act.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to the claims occurred in this jurisdiction. Specifically, the Facility Agreement was negotiated in part, executed, and performance under the Facility Agreement occurred in this district.

## FACTUAL ALLEGATIONS

A.     **The Facility Agreement**

15.     At Audi's insistence, in June 2013, Legend and Audi entered into an Audi Exclusive Facility Construction Agreement ("Facility Agreement"), dated May 16, 2013, and fully executed on June 19, 2013, to construct a new Exclusive Audi facility located at 5775 Merrick Road, Massapequa. New York.  A copy of the Facility Agreement is attached hereto as Exhibit 1.

16.     According to Audi, Legend needed to expand and renovate its facilities in order to remain compliant with their Dealer Agreement and in order to continue to earn bonus money needed by the dealership to remain profitable.  Audi based these demands on its projections of expected future sales and service volume in Legend's assigned market territory.

17.     The Facility Agreement set forth milestones that Legend was expected to meet in order to receive various bonus payments.

18.     Legend agreed, *inter alia*, that it would complete construction drawings by May 31, 2014; obtain all necessary approvals and building permits and begin construction by June 30, 2014; and would complete construction by June 30, 2015.  *See* Exh. 1, Facility Agreement.

B.     **Legend's Performance Under the Facility Agreement**

19.     On several occasions Legend requested an extension of the milestones set forth in the Facility Agreement.  Upon information and belief, Audi regularly grants such extensions to its dealers provided they are making reasonable progress.

20.     On April 3, 2015, Anita Salomon, Senior Manager, Network Development, Eastern Region of Audi, sent a letter via Federal Express to Michael Siegel of Legend, with a copy to Fred Stolle, Audi Area General Manager, and Jeffrey Tolerico, the Audi Director of the

Eastern Region, which is attached hereto as Exhibit 2. The April 3, 2015 letter, in relevant part, stated:

> To continue to be eligible for the Standards Bonus, Legend Audi must meet the following construction milestones:
>
> **Construction Start: June 30, 2014**
> **Construction Completion: June 30, 2016**
> (The LOI was amended per your request to extend construction start past the original deadline of June 30, 2015)
>
> Further, if the facility project is not completed by May 31, 2016, Standards Bonus will cease until the facility is completed. If the project is not completed, Audi maintains the right to charge back all Standards Bonus payments made under the terms of the LOI.

**C.     Audi's Breach of the Facility Agreement**

21.     On August 10, 2015, Fred Stolle hand delivered a letter dated August 5, 2015 to Michael Siegel of Legend, which is attached hereto as Exhibit 3. Inexplicably, the letter, in relevant part, stated: "[t]he facility construction completion milestone of June 30, 2015 has not been met. Therefore, standard bonus payments will cease beginning with July payments until the facility project is completed. If the project is not completed, Audi maintains the right to charge back all payments made under the Audi standards bonus since the cure period began."

22.     Mr. Siegel then showed Mr. Stolle a copy of Audi's April 3, 2015 extension letter. Mr. Stolle said he would speak with his superiors and get back to Mr. Siegel.

23.     On August 13, 2015 Mr. Stolle responded by letter, a copy of which is attached hereto as Exhibit 4. In that letter, Mr. Stolle stated:

> Naturally, I was surprised at the letter you produced stating you have received a construction extension from Audi changing your construction deadline. We have looked into the circumstances surrounding the letter you showed me, dated April 3, 2015. We now know that it was sent by a former Audi employee, who had neither the facts, nor authority to grant such extension. He used

5

>Anita Salomon's electronic signature without prior approval. You showing me the letter was the first time I had even heard of it or been made aware of its contents. Ms. Salomon was similarly surprised. We apologize that this happened as there was never any thought given to an extension. Our position has not changed, and the Standards Bonus is still suspended.

24. In other words, four months after Audi agreed, in writing, that the "LOI was amended per [Legend's] request to extend construction start past the original deadline June 30, 2015," Audi now claims that the letter was sent in error even though it was signed by Anita Salomon, a member of senior management with the authority to do so, with copies to Fred Stolle and Jeffrey Tolerico. *See* Exhs. 2,3, 4.

25. Audi's failure to continue the payments of the Standard Bonus is a breach of the Facility Agreement as modified by the April 3, 2015 letter from Anita Salomon.

26. Audi's withholding of bonus payments from Legend also violates the price discrimination provisions of the Dealer Act, N.Y. Veh. & Tr. L § 463(2)(g). This illegal price discrimination will continue to have a substantial adverse financial impact on Legend if permitted to continue.

27. As a result of Audi's wrongful termination of Legend's bonus eligibility, Legend stands to lose approximately $700,000.00 annually, which will render Legend unprofitable and further threaten its viability. In 2014, Legend received over $696,000.00 in Standards Bonus payments. In contrast, in 2014, Legend earned a net profit of $498,000. In short, by withholding the Standards Bonus, Audi has rendered Legend instantly unprofitable.

## FIRST CAUSE OF ACTION
### Violation of the New York Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Tr. L. § 463(2)(g) and for Money Damages and Injunctive Relief

28. Legend repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

29. Under Audi's Margin and Bonus Program and the Facility Agreement, Legend has been eligible to receive the Standards Bonus of 3.75% of the Manufacturer's Suggested Retail Price ("MSRP") on every new Audi vehicle sold in a given month.

30. As such, receipt of the Standards Bonus affect the price dealers like Legend pay for vehicles purchased from Audi.

31. Audi's wrongful withholding of Standards Bonus payments from Legend results in unlawful price discrimination, as other Audi dealers receive such bonus payments and, therefore receive more favorable pricing than Legend.

32. Receipt of the bonus payments have the effect of reducing the price per new vehicle sold by Audi to Audi dealers and allow the dealers to remain competitive. The withholding of such bonus payments puts a dealer at a competitive pricing disadvantage both with respect to the net price that the dealer is required to pay Audi for a new vehicle and the price that the dealer can profitably sell the new vehicle to a customer.

33. Audi's summary and unilateral suspension of Legend's Standards Bonus violates Dealer Act § 463(2)(g), which makes it unlawful for a franchisor "[t]o sell or offer to sell any new motor vehicle to any franchised motor vehicle dealer at a lower actual price therefor than the actual price offered to any other franchised motor vehicle dealer for the same model vehicle similarly equipped or to utilize any device including, but not limited to, sales promotion plans or programs which result in such lesser actual price."

34. By unilaterally and summarily suspending Legend's Standards Bonus in violation of the Facility Agreement, the price discounts resulting from the Standards Bonus payments are not reasonably available to Legend on a proportionately equal basis with all other Audi dealers.

35. Legend seeks damages equal to the 3.75% of the MSRP of all new Audi vehicles sold by Legend after Audi suspended payment of the Standards Bonus.

36. In addition, Audi's withholding of the Standards Bonus from Legend will destroy its ability to remain competitive in the marketplace because other competitor Audi dealers will have a price advantage over Legend, both with respect to the net price they pay Audi for new vehicles and the price that they can sell those vehicles profitably to customers. Legend will not only lose sales because of its uncompetitive pricing, but it will also lose the ability to market to lost lease return customers, and lose allocation of new vehicle inventory going forward. This will have a dramatic and systemic negative impact on Legend's business that will be felt for years to come. Accordingly, Legend seeks, in an amount to be determined at trial, all lost profits on all sales lost as a result of the unlawful price discrimination.

37. Legend also seeks preliminary and permanent injunctive relief directing Audi to pay Legend all Standards Bonus payments for new Audi vehicles sold on or after July 1, 2015.

38. Pursuant to section 469 of the Dealer Act, "[a] franchised motor vehicle dealer who is or may be aggrieved by a violation . . . shall be entitled to . . . sue for, and have, injunctive relief and damages . . . ." Under this statutory language, an aggrieved dealer need not show irreparable harm to obtain an injunction.

39. Legend has, in any event, no adequate remedy at law. In calendar year 2014, Legend received Standards Bonus payments totaling over $696,000, but only recognized a net

profit of $498,000.  In other words, the loss of the Standards Bonus renders Legend instantly unprofitable.

40. Moreover, damages are not easily calculable and will not fully compensate Legend for the harm caused by Audi's violation of the Dealer Act, especially considering that the Audi brand is expected to increase its market share in the immediate future.  Further, it will be difficult to calculate the number of sales Legend will lose because it would be operating at a price disadvantage to its competitors.  Surrounding dealers that receive the Standards Bonus can purchase new vehicles from Audi at lower net prices and offer their customers lower prices than Legend and yet make a larger profit than Legend.

41. It will also be difficult to calculate the amount of future sales lost to Legend and the damage to Legend's good will and consumer perception as a result of Audi's wrongful conduct alleged herein.  If Legend cannot meet a competitor's price, it will lose credibility with that customer and in the marketplace.  Moreover, most Audi transactions in this market are leases.  Legend will not only lose customers today, but will also lose the opportunity to market to those customers when they return their lease vehicles to the selling dealership at the end of the lease.  Finally, as a result of decreased sales, Legend will lose future allocation of new vehicle inventory, which will further drive down sales in the future even after the Standards Bonus is reinstated.

42. Accordingly, since Legend has an inadequate remedy at law, it is also entitled to preliminary and permanent injunctive relief pursuant to Fed R. Civ. P. 65 in addition to Dealer Act § 469(1).

## SECOND CAUSE OF ACTION
### Breach of Contract

43. Legend repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

44. The Facility Agreement is a valid and enforceable contact between Legend and Audi.

45. Legend has fully performed its obligations under the Facility Agreement and is not in breach thereof.

46. The requirements for Legend to continue to be eligible for the Standards Bonus were modified by the April 3, 2015 letter from Anita Salomon. Pursuant to that letter, construction completion had to occur by June 30, 2016. Exh. 2.

47. Legend is in compliance with the terms of the amended Facility Agreement. Nevertheless, on August 5, 2015, in breach of the Facility Agreement, Audi ceased payments of the Standards Bonus beginning with July payments.

48. By reason of the forgoing actions, Audi breached the express provisions of the Facility Agreement, or alternatively, Audi breached the implied covenant of good faith and fair dealing in the Facility Agreement.

49. Legend has been and will continue to be damaged as a result of Audi's contractual breaches.

50. As a result of Audi's wrongful breach of the express provisions of the Facility Agreement, or alternatively, the implied covenant of good faith and fair dealing therein, Legend has been damaged by the loss of Standards Bonus payments and will be further damaged by lost sales. The amount of damages that Legend has sustained to date, and will sustain in the future, will be proven at trial.

## THIRD CAUSE OF ACTION
### Declaratory Judgment and Injunctive Relief

51. Legend repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

52. Pursuant to the Facility Agreement, the parties contemplated completion of the milestone deadlines as set forth in the Facility Agreement and the completion of the renovated facilities by June 30, 2015. However, in all cases, those deadlines were subject to modification by the parties.

53. At all times, Legend has kept Audi fully informed of its progress through the various milestones outlines in the Facility Agreement and has been in compliance with its obligations under the Facility Agreement.

54. Audi's suspension of the Standards Bonus effective July 2015 is a breach of the Facility Agreement.

55. There exists an actual and justiciable controversy between Legend and Audi concerning its rights and obligations under the Facility Agreement.

56. Therefore, Legend seeks a judgment declaring that Legend has not breached the Facility Agreement and that Audi has materially breached the Facility Agreement by withholding Standards Bonus payments from Legend.

57. Legend also seeks preliminary and permanent injunctive relief enjoining Audi from terminating its Standards Bonus payments based on its false assertion that Legend is in breach of the Facility Agreement.

WHEREFORE, Legend requests that a judgment be awarded by the Court in its favor and against Defendant Audi as follows:

(a) on the First Cause of Action, (i) compensatory damages in an amount to be proven at trial, plus prejudgment interest, costs and disbursements, (ii) injunctive relief to prevent Audi from withholding bonus payments, and (iii) attorneys' fees, as permitted under § 469 of the Dealer Act;

(b) on the Second Cause of Action, (i) compensatory damages in an amount to be proven at trial plus prejudgment interest, costs and disbursements;

(c) on the Third Cause of Action, (i) a judgment declaring that Audi is in breach of its obligations under the Facility Agreement, that Legend is in compliance with the Facility Agreement, together with preliminary and permanent injunctive relief enjoining Audi from suspending Legend's Standards Bonus payments and from taking any action against Legend based on its false assertion that Legend is in breach of the Facility Agreement; and

(d) Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

Dated: August 19, 2015
       New York, New York

                                      Respectfully submitted,

                                      ARENT FOX LLP

                                      By:   /s/ Russell P. McRory
                                              Russell P. McRory
                                              James M. Westerlind
                                              Lee A. Pepper
                                              1675 Broadway
                                              New York, New York 10019

                                      *Attorneys for Plaintiff Legend Autorama Ltd. d/b/a Legend Audi*